Case number 16-5196. League of Women Voters of the United States et al. Appellant v. Brian D. Newby and his capacity as the Executive Director of the United States Election Assistance Commission et al. Mr. Keats for the Appellant League of Women Voters et al. Mr. Tenney for Brian D. Newby and Commission. Mr. Kobach for AFL-E Kansas Secretary of State and Ms. Phillips for AFL-E Public Interest Legal Foundation. Good morning. Good morning. May it please the Court. I'm Michael Keats of Stroke and Stricken Lavon. I appear for the League of Women Voters. Your Honors, the Executive Director of the U.S. Election Assistance Commission did not have authority to grant the request of three states to require documentary proof of citizenship in connection with the federal form. The Election Assistance Commission is set up as a bipartisan commission. It has four seats. Right now three are occupied. The intention was to have two Democrats and two Republicans. Right now we have two Republicans and one Democrat. Under the organic statute that created the commission, the Help America Vote Act, you need three commissioners to approve of a commission action. The obvious intent here is to make sure that one Democrat and at least one Republican support an action that the commission takes to ensure bipartisanship. What Mr. Newby did here was literally turn the org chart of this agency on its head and threw the entire structure of the agency out. It is undisputed that three commissioners did not approve of Mr. Newby's actions. As a result, those actions were altered It is also undisputed that there was no delegation of authority by this commission, by three commissioners, to Mr. Newby to create, let alone change, the EAC's policy. No one is seriously contending that when this commission was reconstituted in 2015 with a quorum and they adopted a new statement, delegated the authority to change the federal form, let alone to change it in a way that was contrary to prior decisions of this commission, let alone prior decisions of the FEC, let alone prior decisions of the Congress. And at the end of the day, that is the bottom line. We have an executive director who acted without authority and under the Administrative Procedure Act, his actions must be vacated. Even if the commission had done it itself, with no more than the language used by the executive director, there still would have been the problems of explaining the decision under Fox Television and also explaining why this was necessary to carry out the state substantive requirement. I agree. And both of those are completely missing. Agreed. Yeah, this is administrative. This didn't mean we want them to get lost. No, and I appreciate that. Look, if you wanted to find ways to violate the Administrative Procedure Act and come up with a hypothetical for law students as to how to do it, that's a pretty good hypothetical. And at the end of the day, bottom line, that really is the case. And even the Department of Justice, which I think understandably faced with these facts, concluded that at a minimum they had to consent to a preliminary injunction of some form to reverse this. Now, let me take a step back, because this is an unusual case, and we set it up as a preliminary injunction initially, because when these actions happened, it was back in February, and there were a series of primary elections in the various states, and obviously now we have the presidential elections. That's all by the boards. This court is a reviewing court. Even with a preliminary injunction actually has the authority to decide this case, and you actually have the power to vacate the actions. The case that actually comes to mind is actually, Judge Williams, one of your cases, a case that you released on the panel for. It was American Bioscience v. Thompson, a 2001 case, 269 F3rd 1077. What that case says, and that came up also on the denial of a preliminary injunction, where the judge not only found a lack of likelihood of success on the merits, but also the absence of irreparable harm. What the court said there is, the entire case doctrine applies. When a district court sits in review of an agency action, it's actually a question of law. You have an administrative record. That's the record, which is what we have here, when this was decided, certified by the Department of Justice, and at the end of the day, if you have established entitlement, if you have established a violation of the Administrative Procedure Act, the remedy is vacater. And I'll read some language from the case. Not always, in this circuit. Yes, that's correct. That's correct, not always. And you haven't discussed that in your brief, I don't think, have you? We've addressed, we think that actually there is a grounds for vacater here, and it's pretty clear. But I'm happy to address your concern. So what this court wrote here is that when a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal. The entire case on review is a question of law. If an appellant has standing, and the League of Women Voters plainly has standing, which is undeniable here, and that's just a quote from the case, and prevails on its APA claim, it is entitled to relief under that statute, which normally will be a vacater of the agency's order. But whether or not appellant has suffered irreparable injury, if it makes out a case under the APA, it is entitled to a remedy. I'm not trying to tell you here that we haven't made out a case for irreparable harm. This case fundamentally involves the rights of our organizations to organize, to communicate, to engage in political speech. It involves the rights of voters to have their votes counted. And we have no doubt, and we think that there are circuits around the country that have agreed with us, that irreparable harm is established here. What's your best formulation of the irreparable harm? Yeah, sure. So my best formulation of the irreparable harm here is, I want to refer back to Judge Scalia's language, and it'll tie it together with what happens here. What Judge Scalia said is that the federal form, this is not about the state's election forms. They can put in what they want subject to their own laws. We're not debating that. They can do that. They are doing that. What Justice Scalia says is, states retain the flexibility to design and use their own registration forms, but the federal form provides a backstop. No matter what procedural hurdles a state's own form imposes, the federal form guarantees that a simple means of registering to vote in federal elections will be available. How is that tied into our harm? So when we go out, it is absolutely true. We try, in Kansas in particular, to register voters to the documentary proof of citizenship requirements that are part of the state form. But there is a group of people we find time and time again that simply lack ready access to those documents. Who are they? Okay? They tend to be poor. They live in rural areas. They're African American. These are the people, the women, who did nothing more than marry and change their legal name and move out of state. None of these people have done anything wrong. Okay? They have established their entitlement to U.S. citizenship within the meaning of the federal form by swearing under oath and fulfilling those elements. We use the federal form as the backstop for those people. Our core mission is to help all eligible voters to vote, not what the district court below thought was, well, your mission isn't harmed because you can help some of them to register because they have documentary proof. This form was created for our organization. The statute expressly directs state election officials to make it available to us. The entire point of the National Voter Registration Act was to promote voter participation and to help voter registration organizations like ours do this important work. When you encounter an individual potential voter registered in Kansas, in a shopping center, you still have to go through all the various possibilities of establishing citizenship regardless of the outcome of this case. No. If we want to get them to register in state and federal elections, yes. The voter drive and the registration is for both state and federal. So if that's the case, then you have to go through all the Kansas requirements for citizenship proof, even if you wouldn't have to go through them for the federal. Well, if what you're saying is we have to have that conversation, the answer is yes. But there's a further conversation to be had. If you do not have those documents, the United States Congress has created a federal form that at least allows you to vote in a federal election. So it's that backstop function again that Justice Scalia himself identified. You are right. You are right. We would have that conversation. We also say that if, in fact, you're permitted to vote in a federal election but not permitted and not qualified to vote in a state election, that that would raise serious constitutional problems under Article I and the 17th Amendment. No, no, no. That's not it. With respect, I don't believe that's what he held at all. What he said was if a state was precluded from being able to enforce its eligibility requirement, then a serious constitutional issue might arise. But happily, they didn't have to reach that because the state could go back to the EAC, which is the agency that has authority over the federal form. It's actually its only rulemaking authority that's binding on the states. This is an important, central, high-profile subject for them. And you can go back and demonstrate to the EAC that you are precluded, that because of whatever, that the mere oath is not sufficient, that you are not able to actually confirm eligibility and administer your elections without that proof. And what the EAC has, what Congress decided, what the FEC decided afterwards, and what the EAC has consistently decided for more than a decade, is that states are precluded. Most every state in this country already accepts the federal form to register in federal and state elections. Kansas is the outlier. Kansas is almost the only state right now, I think it is the only state right now, that is enforcing that requirement as a state in federal elections. Is Louisiana enforcing its ID requirement? I don't know if they are or they aren't. And also, I think if you're referring to what the executive director referred to in her footnote, it's not clear that the EAC was right in granting that request. I'm referring to what the Supreme Court in the Indian case referred to in its footnote. And also the oral argument by the Solicitor General saying that, at least implying, that what Kansas or Louisiana was doing with requiring voter ID was quite a right. Well, and I will say the EAC in their 2014 decision in a footnote says they actually see that it actually might be wrong. They have never followed up on that, to be clear, but it is not clear that that's right and it is different than documentary proof of citizenship. And the bottom line is you have consistent action going back by this agent. Congress debated whether to include documentary proof. They rejected it. The FEC, when they adopted the rules that govern the federal form, considered whether to require naturalization information. They rejected it. The EAC, unanimously, a unanimous commission rejected it when they adopted those rules. The EAC, when they took over, consistently ruled against that. So the point being is, at the end of the day, it is up to the EAC to decide whether that's necessary. And then if Kansas disagrees, if they think the EAC got it wrong, which Justice Scalia said, they can bring an APA challenge. And in fact, that's precisely what Kansas did in 2014. They went to the commission. They presented their proof, which, by the way, was very modest and was certainly less than had been shown in the Arizona case that the executive director said there is a commission ever pronounced either by way of an adjudication and interpretation, or less likely a rule, that the word necessary is for the commission to decide as opposed to a state. They have taken, yes, actually, they have not adopted a regulation that says that. Is there an adjudication by the commission saying that? Yes, adjudication in the Administrative Procedure Act sense of an adjudication, right, which is everything that isn't done as a formal rulemaking or as a formal hearing is an adjudication. So yes, they have. The first time they did it was in 2006, when the agency decided unanimously, initially, to reject Arizona's request for documentary proof of citizenship. And there is a letter that sets forth the grounds and their understanding of necessary and who decides. That was not the first time, by the way, they took that position in 2005, facing a Florida law that wasn't documentary proof. It had to deal with whether you had to provide information about your mental well-being, among other things. They also had taken the position unanimously, unanimously, it's undisputed that was unanimous, that it was for the commission to decide whether it was necessary and they just deemed that was not necessary. Louisiana change was, approval was by the commission. Yes. What interpretation, if any, did the commission give to the necessary phrase in deciding that? Yeah, I don't know that they actually explained themselves. And as we have said, and as we pointed out to the commission, and the last word on the commission is that might actually have been wrong. I can actually get the language if you want from the commissioners last decision. I think it's highly unlikely that it was a correct decision by the commission. Do you want me to get the quote because I have it? Right here. Give me one moment, please. I'm actually running out of time anyway. You want to stand up for the microphone, I'll give it to you. Yeah, yeah, I'll give it to you. Sure, sure. Look, I've got 15 seconds left. Look, thank you. The most important thing I can urge you is the election, deadlines are fast approaching October 12th, October 19th, October 29th. I understand what that means for this appellate court. I understand what we're asking. I understand how fast we're asking you to act. It is not likely that we're asking you to do this, but given the gravity of the harm to voters and for organizations, we urge that you do so. Thank you. Good morning. May it please the court, as we indicated in our brief... Maybe you should identify yourself. I'm sorry, Daniel Tanny for the government. We are not defending the decision that's at issue here on the single ground that it doesn't comply with the statutory standard, especially as explicated by the Supreme Court in the Inter-Tribal Council case. And that is the ground on which we are suggesting that the court could resolve this case in these unusual circumstances where we're not defending the agency decision that's at issue. We're content to rest on our briefs. If the court does have questions, I'm prepared to entertain them. Why do you think the leagues have demonstrated irreparable harm? You haven't mentioned that hardly in your brief, except that you agreed in the district court. That's it. Right. We agree. The leagues are conducting voter registration activities contemplated as counsel discussed by the statute. And they have affidavits suggesting that they want to use this federal form to register voters and that it's made more difficult to do that. And the district court accepted that and said that they had standing for that reason. And given the nature of registration drives and that every day they're trying to register more people, we thought that harm would be irreparable. Has the change been made on the website? The change has been made on the federal form. Yes. In all three states. But Alabama and Georgia are not enforcing their requirements? The record suggests that yes. So apparently if you disregard the instructions on the form that does not include documentary proof of citizenship in those two states, they will still register you to vote according to the district court record. And the district court record includes representations from who in those states? I apologize. I don't recall exactly. The parties didn't, as I remember, dispute that that was the case. I'm just saying that because I don't want to be suggesting to you that I have separate, I can separately confirm that I'm just going based on what the parties seem to understand and the district judge seem to understand in the district court. Unless there are further questions. Thank you. Thank you, your honors. All right. Counsel for intervener, the Kansas Secretary of State. Thank you. May it please the court. I'm Chris Kobach representing the state of Kansas, office of the Secretary of State. If with the court's leave, I'd like to just very quickly hit three factual issues there. I think there's no dispute about that. They're important to understand and get into the arguments already made. Number one, since the creation of the all of the state specific instructions have been approved and the vast majority of those by the executive director alone, without any action by the commission that a Supreme Court correctly described this as a quote, entirely informal end quote process in the state of Kansas has experienced. We would simply send a letter and then their change would be made without any explanation of why the change was made, why our request was granted. Other states would send email, although we relied on letters and never prior to Mr. Newby's recent case in this about which we are talking now, never was any acceptance ever explained. When, when the EAC granted a state request to change the instructions, it was just made without any explanation. Second factual issue in this recent request, November. Correctly. Yeah, that's correct. Although yeah, the only other litigation was regarding denials. In November, 2015, Kansas requested the instructions we're talking about now. There are three significant differences between these instructions and the 2013 request by care, Kansas and Arizona. Uh, one, the new instructions include a 90 day limit that is part of a new Kansas regulation. You have 90 days to provide your proof of citizenship. You can email it and fax it and whatever. As a reference to a suspension list in connection with that, the, the, the suspense file is the term of art that our system uses. It just means that once you've provided your registration form, you are, your registration is held in suspense until you finish it by providing proof of citizenship. Are the names of the persons who are on the suspense list, is that maintained in a computer file? Yes. And actually, so we have our statewide voter registration database. You could be active, which means you've completed your registration. Inactive, meaning that you may have moved out of the state or I'm sorry, so inactive is you haven't voted. Uh, recently we have reason to believe you've moved out of the state and we're in the process of potentially removing you if we confirm that. And then suspense could be any number of reasons. It might be that you're a 17 year old who hasn't turned 18. Are the Browns on that list? Uh, the Browns are in a separate category and they are, it's important to know the answer to your, my question is no. They are, um, I believe they are not in the suspense list. Well, their, their, their registration is incomplete, but we have a separate list for this 180 people who used the federal form prior to the change of instructions on February 1st. Are they receiving 90 day notices? No, they, they are being given all of the benefit of, as if the federal form was never changed per our request. And so they are allowed to vote in federal, they're fully registered for federal elections. They can't. Who has the authority to bind the state of Kansas so that no challenge can be made to the eligibility of the Browns to vote in the federal and state elections? I'm not sure I understand your question, but it's very clear. Who has the authority to bind the state of Kansas? Yes. Well, obviously an article three court would have the authority to bind the state of Kansas. The EAC has the authority only to modify the wording of the federal state of Kansas has that authority. Oh, the, uh, well, federal, the Kansas law is applied by the secretary of state's office and by the counties. And so the counties are the ones who go in and change the status of any individual voter. The secretary of state determines a statewide voter policies and registrations, both rules and statute. Is it your representation that if the Browns vote, in whatever elections, federal and state, that there can be no challenge to their eligibility? Under state law, we, we treat them as eligible to vote in federal elections because the Kansas Kansas would concede in any litigation that the Browns are fully eligible to vote in federal elections only the Browns. It's important. This, this court decision will have no effect on the registered prior to February 1st. Well, I think the record is unclear. All right. That's why I'm trying to reply. If you're talking about what they asserted in their reply, that is false. They asserted that the Browns are not on any registration role. What they did, they made a public request for the list of all active voters. The Browns are in the special role of 180 some people who used the federal form prior to it being changed in the federal first. So that one, if you, if you remember the public, you walk into your county clerk's office, you're not going to get that role, but they are, they did vote and they voted in the, the, the change in the federal form was not retroactive. People that correct, correct. We are treating those people. It's not retroactive. And is it correct that the federal form really only deals with people who not have not been previously registered? As a practical matter? Yes. You wouldn't, if you're already registered, that you, we had a grandfather clause, so you, you didn't have to prove your citizenship. If I might just quickly go to a couple more factual matters that may help the court. So this new request. So the litigation in state court involving the Browns. Yes. Has Kansas conceded error? No, not at all. But what the, the question in district court is, in state district court is this, does the state have the authority to bifurcate the election and say this voter can vote in federal elections only and this voter can't? E.g. what you have described as to the Browns. Correct. And the, on a T, there's only been a TRO judgment there. We're now, we have preliminary injunction hearing on September 21st. We're a long way from summary judgment. And so the, the decision with respect to the Browns is, do they, do we have the authority to say you can vote in federal elections only? The court said no on TRO that the secretary of state didn't have authority under Kansas statute, that the statute wasn't specific enough. We argue that though the statute does give me the authority to take any steps necessary to comply with the NBRA. And because this is an NBRA issue, but no, that decision is far from, we've only had a TRO judgment at that point. We have a hearing on September 21st. Let's just jump to irreparable harm. The leagues have failed to establish and contrary to their reply brief, the wording of the federal form in no way bars the plaintiffs from engaging in first amendment protected registration activities. They're only real. Barred. But the question is whether, can you not be a bar? It's not even an impediment, your honor. Uh, they're, they're only, uh, require the, the league to, uh, incur expenses and, and engage in activities that add to the difficulty of getting potential. What it does is it forces them to change the content of their educational materials. The materials say, well, if you use a federal form, this happens. Now they have to say, if you use a federal form, this happens, but they are producing materials of about $13,000. The case is not the significance of a mere change, but this is a change which clearly adds to the task to be performed to get someone registered. I think on the contrary, and we put this point in our brief, it simplifies things before the federal form was changed. They had to explain to a confused voter. Why does the federal form have a different requirement regarding citizenship than a state form? Now that the EAC has made a change, federal form of state forms are the same there. It's easier to explain to the voters. And as judge Leon noted, the amount of material they produce is the same. I mean, isn't it what you just said? It seems clear that it makes it more difficult to get voters registered for the federal election. The proof of citizenship requirement in and of itself adds another step. We do not concede that it makes it more difficult. Ninety-four percent of the people who have started the process have completed the process. Right. And many of the ones who haven't have moved out of the state. People get over a hurdle does not mean that it was not a hurdle. Well, and then, Your Honor, we have to fall. That's their fallback harm. So if their first harm is, well, we just changed the wording of our materials. Now the fallback harm is, well, we're not as successful registering people because we have this proof of citizenship requirement. Two problems with that. Another one has to look at degree of success. Let's just assume additional hurdle. Let's assume that it's a very big additional hurdle. Give all the benefit to them. Still, it is speculative. And this is what the district court correctly noted. It is speculative whether somebody is going to fail or succeed based on the change they have in the way they approach these voters and give them information. And secondly, even if it were not speculative, if it were certain to me, I mean, you're talking about hundreds of people being having the registration process facilitated by the league. And all of them are now required to produce documentary proof of citizenship. It's to be hardly speculative to say that it's likely to reduce the quantity of registration. It is speculation when you say it is likely, Your Honor, with respect. I mean, you're saying it's very likely. It might be. Irreparable harm has never required absolute certainty. Let's assume it is absolutely certain. Then they have, then this court would have to disagree with the Sixth Circuit, which says the right to vote of individuals not even presently identifiable. So then they have this problem where they're claiming harm to a hypothetical individual who hypothetically is unable to complete the registration process in time for irreparable harm purposes. They're actually claiming harm to the achievement of their mission, which involves facilitating potential voters actually getting themselves registered. That they are. But the Sixth Circuit has ruled, and I think it makes sense, that you can't claim as part of your mission, my independent decision or your independent decision to register or not register. That is a separate decision that they can't say we as an organization have an interest in making sure that Judge William registers, whether he knows he needs to or not. We're going to persuade him. I think you're misformulating what the league posits as their goal, namely to facilitate registration by people who aren't. And then let's go to that final point. What they, by their own declaration, say is their goal, as Judge Randolph noted, is that you register for both state and federal elections. And to the extent that they use a federal form that suggests that you need not provide proof of citizenship, they undermine their own goal and these people do not get registered for state elections. Don't you think they're able to, they're entitled to make priorities among their goals? By their own admission, their goal is to register people for both federal and state. Declarations also make clear that getting people registered for the federal elections is an independent goal and it appears, at least in this context, to be one that they regard independently important. I would like to suggest here that the attitude of the attorneys may not reflect the attitude of their clients. In a deposition for a related case, the Fish case, and they grouse about this in a footnote in their reply, the representative of the vote in Kansas elections, not just federal elections. But let me jump to some important points on the merits. Now, you're overlooking other declarations indicating the decrease in the number of persons actually registered. So those are not speculative. Those are facts in this record. You're talking about in their registration drive, they assert that we didn't register as many people in this drive as we did in last year's drive. The actual registration tallies for the state of Kansas indicate that we have set an all-time record this past August in the number of people registered prior to a presidential year in primary. Well, you are saying that it's not the league. Right. They're asserting what we think last year's drive was more successful. But of course, there are thousands of reasons why one drive may have been more successful, location, time, whether it is simply a far-fetched assertion to say, well, and it was the change in the federal form, which now makes it simpler to explain things to voters. But let me go to the merits. And this is one thing that hasn't been discussed yet, and I think it is of decisive importance. The executive director's decision was compelled by federal rule. The FEC promulgated a rule mandating that the federal form, quote, shall list U.S. citizenship as a universal eligibility requirement and include a statement that incorporates by reference each state's specific additional eligibility requirements. But this is not an eligibility requirement. This is simply a means of demonstrating. And I anticipated you might ask that. The same rule has another section. That is why you even focused on that. Well, and I apologize. There's two sections of the rule. We put one in the brief proper and one in the addendum. Please look on page five of our addendum, where you will find 9428.3b, 9428.3b of the same rule. It says the state specific instruction shall contain the following information regarding the state's specific voter eligibility and registration requirements. So not just eligibility requirements like citizenship or whatever you how you want to find this, but registration requirements as well. That's 9428.3b on page five of our addendum. In both cases, the rule promulgated by the predecessor of the EAC, the FEC, used the word shall, and they used the word shall intentionally. Now, the appellant leaks, and Mr. Newby, by the way, his behavior and his decision, and he did articulate a rationale for his decision, which is in the administrative record, both on page one and then his declaration on page 242. He is perfectly consistent with this rule. He says the states have changed their law. I am supposed to make an according change when requested in the state's instructions. Now, the appellant... Consistent with the statute? Absolutely. And this is another point... But how can that be when he says the statutory reference is irrelevant? And you and your brief make an argument about context and reading and all that sort of thing, but the commission seems to have been pretty clear about that. The... What the... What he was saying... The statute has two parts, and that's something that the leaks actually physically omit in their brief. They continue to put an ellipsis about the part they don't want you to read, and the statute says, right after the word necessary, sends information as is necessary to enable the appropriate state election official, one, to assess the eligibility of the applicant, and here's the part they omit, and two, to administer voter registration and other parts of the election process. And you want us to read and as or? I think that's the most reasonable reading of it, because there are some things... Congress chose the word and. The reason that's most reasonable is there's lots of information in the state's specific instructions that include things like, here's the address of the office. Well, the address of the office doesn't assess eligibility. Here are the dates by which you need to do things. Those don't assess eligibility of the applicant. Those are things that are needed to administer the voter registration process. So it has to be read as an or, because there's so much that isn't... Doesn't go to the eligibility of the applicant that is included in the state's specific instructions. And so the statutory interpretation that he offers when he says, well, it's irrelevant whether I think proof of citizenship is the best and is necessary in a subjective way to assess eligibility in terms of citizenship. What is relevant is the second part of that statute. Again, this is 20508B1, to administer voter registration and other parts of the election process. Can you take me through? I was late in getting to your addendum, but I'm looking at it now. And just briefly, give me the argument that you just made from the... Yes. You said addendum page five. Page five. Yeah. So there's... Five or six? It might be six, Your Honor. It's 20508B1 is the first one that we quote. And then the other part of it is 20508C. But B is on page six, right? Let me just check with my co-consultant. Got it. It might be point four. We'll check the addendum real quick. But the language that you'll find that I'm referring to is... Well, we have the statute on page six. On page five are the regulations that you say the Federal Election Commission initially promulgated, right? Yes. Okay. So what is it on... Is it 9428.4 that you're referring to? Yeah. It's addendum page six. You are correct. It's page six. And it's right at the bottom of the... Two-thirds down the page. Specify each eligibility requirement. Shall list U.S. citizenship as eligibility requirement and include a statement that incorporates by reference each additional eligibility requirement. And then that's the first one. And then the second one is 11 CFR 9428.3B, which is found... .3B. Okay. I've got it. It's on page... Oh, it is found on page five. Oh, here we go. It's right on page five in the middle of the page, paragraph B. The state-specific instructions shall contain the following information for each state arranged by state. Address, dot, dot, dot, information regarding the state-specific voter eligibility and registration requirements. So that's found on page five of our addendum, right in the middle of the page. Well, how does that answer Judge Rogers' question about whether documentary proof of citizenship is an eligibility requirement or just simply a means of proving eligibility? Because that second language says both. Both the eligibility requirements and the mere registration requirements. I think she's drawing a distinction between maybe citizenship is just the eligibility requirement and that's enough, but the registration requirement is proof of citizenship. So in other words, specific voter eligibility and registration requirement, and the proof of citizenship is a registration requirement if it's not an eligibility requirement. Right. We think it's both, but I think everybody can see that it's a registration requirement. You know, this is probably not the right question to ask you, but if you know, it would clear something up for me. When did the commission reduce to three members as opposed to four? It still is four members. The Congress just hasn't finished confirming the empty spots on the commission. But it makes things difficult because the statute requires three votes to do anything. And so you have a three-member commission that has to be unanimous to do anything. So what is the record with regard to the commission's reaction to Mr. Newby's decision? There has been no reaction. Well, I thought one member of the commission said we need to vote on that. So he didn't have three votes. Right. He didn't have three votes. And that's a great question because look, the commission at any time could sui sponte reverse his decision on their own. How can, again, I'm asking the wrong person, but I, and Mr. Tenney, I hope you pay attention to this question because I'm going to ask you in rebuttal. Mr. Newby is a defendant in this case, and Mr. Newby is the one who made this decision. So we can put it, how can the Department of Justice represent a commission opinion if the commission acts only with three votes? The commission didn't act here at all. And I think the plaintiffs have been playing a little fast and loose with their words of, you know, you have to get this or that. I'm just wondering about the Department of Justice's representation of a commission that is required when it makes a policy decision to have three votes. If the commission believed that, unanimously believed that Mr. Newby violated his role in this case, which is what the Department of Justice is representing to us, it's, the case shouldn't be here. The commission tomorrow could render a decision to say that's wrong. These are executive director. We're responsible for supervising. That's exactly right. But if the commission doesn't, if the commission can't do that because it only has two members believing that or one member believing that, I don't understand how the Department of Justice can stand up here and represent the commission's position to us. That's exactly right. And that's what I wanted to end on. There is no policy. There has never been a vote of three commissioners saying it is our policy to reject proof of never. In fairness, if you go back to the beginning, that's not correct. Which beginning, Your Honor? 2005, 2006. We even have the executive director in 2012 after when there were no commissioners. But in, in 05, and this is where their brief is. My point is that Mr. Newby's of his action is this is not a change in policy. This is just, I'm looking for, what did he call it? Correctness and proficiency, something like that. So he didn't make any reference to the statute. He didn't make any reference to what the commission has previously said. This is his interpretation. It's so important that I, I think you understand, but the brief was a little, I don't know if it was intentional or deceptive on this. The, in 2006, in 2006, the commission did not unanimously, that's their word, did not unanimously reject Arizona's decision. The executive director unilaterally rejected it. There was no commission vote. And then Arizona appealed to the full commission and the full commission deadlocked 2-2. So I think the word unanimously is deceptive, whether it's intentional or not. And I think that is a fair statement. There has never been a vote by three commissioners ever saying that proof of citizenship is a criterion or an eligibility requirement that we reject. Never. And there was no commission vote in 2013-14 because there were no commissioners. So that's why all of their discussion of this reversal of policy makes no sense because the commission never had three members adopting such a policy. And what about all the legislative history, Congress's rejection, the FEC's rejection, all of that the executive director is free to ignore? The legislative history, and we explained this to some extent in our brief, Alan Simpson offered a, Senator Alan Simpson offered a interpretive amendment that said we should not interpret this law to prevent any state from acquiring proof of citizenship. Then the principal sponsor of the NBRA in the Senate said that is unnecessary because the language cannot be interpreted to bar a state from providing proof of citizenship. And so the subsequent committee... Is that a particularly accurate counsel? Wendell Ford is the person I'm talking about. Wendell Ford is the one who said it is, it would be redundant, I think was the word he used, because the statute cannot be read. I'm looking at the conference committee report. In any event, those words speak for themselves. Do you have anything else to argue? Your Honor, the, finally, the last point I just wanted to briefly touch on was the constitutional doubt. The IFCA decision says very clearly that not only can we avoid constitutional doubt by just sending it to the EAC with the expectation that the EAC would not put an impediment to enforcing the registration requirement of citizenship. And that's what this is. This is an enforcement mechanism to citizenship. But also, by extension, was the word the IFCA court used, the EAC should also accept the request and not create an impediment to enforcing the registration requirement. Because if they did create an impediment, that would raise constitutional doubt by violating Article I, Section 2, because the state would be unable to enforce their citizenship qualification as BC fit. And you would have separate qualifications for state and federal elections, which is the situation that resulted prior to the February 1st change. So you add all of these factors together, the regulation compelling Newby to do so, the very permissive standard that applies in cases like this, the statute with the second half, the reason why something might be necessary, and the IFCA decision, an expectation that the EAC would the second time around say, yes, Mr. Newby's decision can be defended on multiple grounds. And one last question for me. How many people are on the suspension list in Kansas, including the special category that you say the Browns are in? Right. The special category of people who use the federal form prior to the change in the federal form. How many people are in that category? That's, I believe, 181 or 182. How many people are in the suspension? The overall suspension list is people who are, whose registrations haven't been completed. And that list changes every day because people complete them every day and people... I understand. It's approximately 17,000. And it's important to note... Where can I find that in the record somewhere? I don't think it's in the record because it changes every day. If you look at the declarations of Mr. Caskey from our side... He's gone from, what was it, 16,000 up to 25,000, and now you're representing today 17,000. It's about 17,000, yeah. All these people are leaving the state of Kansas. Well, no. As soon as you provide your proof of citizenship by texting it in or emailing it in, you've come off the list. You have completed your registration. You are no longer in suspense. But if your brother comes in today and registers the vote but doesn't provide proof of citizenship, he goes on... Making representations about what happened to these people that simply are not in the record. The ones that are not in the special category of 181... No, I'm talking about what you represent today is 17,000. You'll see a Caskey exhibit from our office, and he gave the number on the date of that declaration. Right. But we don't have... If you wish, we can certainly update the court with numbers, the most recent number, even today's number, if you wish. It's hard to know what these numbers represent. They just represent the people that are in that flux. They come in, you register, you have provided... Those are people who have filled out a card but haven't yet provided proof of citizenship. They've got 90 days to do it, and the number changes every day. And after 90... Kansas has a procedure, doesn't it, which you haven't mentioned. Yes. People don't have document... If you don't have any of the documents, you just request an informal hearing, and it's usually done by phone, of the state election board. And in that hearing, you can provide whatever you want. And there have been four of them so far, and all four cases, the citizenship has been approved. People have provided family bibles that have the names of their birth on it, school records. They're usually extraordinary cases where somebody was in foster care and their birth certificate was in a fire, and they can't get the... For whatever reason, they can't find the documents. But in every case, they provide other affidavit from your brother saying... By a telephone call. Just by a telephone call. So how big is this office? The Secretary of State's office? Well, you're saying I can just make a telephone... Oh, you call the Secretary of State's office. The Secretary of State's office then convenes a meeting of these three people, of which I am one. And the... Usually the meetings are done telephonically. You send in... You fax in whatever you want. ...17,000 of these before the next election. I just want to understand what's going on here. It's really important to note that the vast majority of the 17,000 come on... In other words, this is not what a number of states have done, where they have provided an method of proof. Kansas is still requiring... No, we provide an alternative. And the alternative is you give us whatever you want. A declaration from your aunt saying you were born on a certain day and born in the United States. That's enough. So the alternative... And it's important to note, the vast majority of the 17,000, and I'm talking overwhelming majority, will go on and come off within a 30-day period. They're just there temporarily until they find their passport or their birth certificate and leave. If they have them. And if they don't have them, again, they can use that alternative mechanism. But at this point, bear in mind, nobody has challenged the constitutionality of our law, the Proof of Citizenship Department. I understand, but Congress has passed a statute that says you mail in this form, and you can attest. And if the state wants to challenge it, they can prosecute you. And that's what states do. And indeed, that's what the executive director pointed to, it's what the 10th Circuit pointed to. You have all these other means as well. Right. And as we pointed out in our letter to the EAC requesting this, that all of those other means have failed in Kansas. The reason you can't prosecute someone who's a non-citizen is because by the time you learn that they're a non-citizen and they're on the rolls, the statute of limitations has run. Your representation today that they have failed, I don't know how you can make that representation. We don't know how many cases were brought. We don't know how many cases could have been brought. We don't know what happened to those cases. So to represent that when you have it on the books and other means have worked, according to the 10th Circuit, according to the executive director of the commission. The 10th Circuit didn't say that the other five means have worked. They said the state hasn't proven that they haven't. And on the record, you will find the cases of 18 aliens in one county alone of our 105 counties in Central County. But Mr. Newby didn't rely on that at all. He did mention it either in his declaration or in his memorandum. He talked about the new evidence that Kansas has provided. I can't remember, but the 7th Circuit recently came down with a per curiam opinion dealing with a change in Wisconsin law. Are you familiar with that case? Not a week ago, I think it was. I confess I haven't read the decision, but I believe that's their photo ID law, which is a different challenge. It was not a proof of citizenship. Yeah. Is there no further questions? Thank you. Great. Thank you. All right. Let's see. Intervenor Public Interest Legal Foundation. Good morning. Good morning. May it please the court. My name is Kaylin Phillips, and I am here on Non-citizen voting is a serious problem in the United States, a problem that Kansas, Georgia, and Alabama have done something about. And your proof of this is what? We actually provided on the record, we provided several key pieces of evidence, including 13 forms from one county in Texas, where the applicants either checked no to the citizenship checkbox, or left it blank, or checked yes and no, and their registration was still processed. And the courts have used this as a minimal showing. At least the courts in these states. Have used the proof of citizenship? Yeah. Attestation? In 13, 18. Well, I assert that even one evidence of non-citizen voting is sufficient, but these are only mere examples that we've provided. We've also provided... You made this broad statement about voter fraud, yet major concern in these three states, and I just wonder what the evidence was. That's all. Sure. Sure. Yes. All these books and articles written saying it isn't. In any event, that's your organization's position. And your organization is saying your mission is being inhibited because... Our mission is the promotion of election integrity, and therefore, non-citizen voting is directly contrary to our mission. So one voter fraud case is sufficient, in your view, to establish an inhibition to your mission? Well, that's not even where we are. Kansas alone... No, I'm just... How about that question? Answering that question? Yes. I would say yes. All right. I would say yes. I said this is very... And I submit that this is a very serious problem with more than one example. So from the league's point of view, taking that logic, the failure to register one voter is an impediment to the establishment of their mission. I think that goes more to standing. I asked you the question about how does this interfere with your mission, and you said one voter fraud was enough. Certainly. Certainly. And I would let them speak to their mission, but that's what they've submitted to the court, that that is their goal is to register voters. And our submission is that their goals are not impeded by what the Election Assistance Commission has done. In fact, they are facilitated. Because in Kansas, for example, the federal form now reflects accurately the state qualifications for voting. But one... So let me ask, what happens in Alabama and Georgia? I'm just not clear. I go to register to vote, and I'm told, well, Alabama's not enforcing this documentary requirement now, so we're going to register you. Has the state legislature said that? Has the Attorney General said that? Has the Secretary of State said that? Because what's to stop somebody from challenging my vote after the election? Because I didn't comply with the state requirements that are listed as part of the federal form. Certainly. And there's certainly nothing on the record that says that any voter has been challenged for that reason, for failure to... Well, we haven't had the election yet. It's true, but we have had primary elections and the addition... I'm just not clear what the status is in those two states. I mean, representation is those states aren't enforcing these requirements. What does that mean? You know, and who's making those representations? You're concerned about election integrity. Yes. Yes. And your point goes to the broader picture, the tree that I think has been lost in the forest here, which is that the district court is hearing a motion on summary judgment on Monday. This case has been fully briefed. More evidence has been provided to the district court than has been provided here. And under this circuit's law, it is prudent for this court, even if you find that there's irreparable harm, which we submit there's not, even if you find that there is, the proper course of action, the prudent course of action is to send it back down to the district court. The district court did not address any of the other factors, including likelihood of success. So therefore, I think that's something that's been missing here, that really the only inquiry here is irreparable harm. And more than that, there are those factual questions about enforcement. The district court found that the law was not being enforced in Alabama and Georgia, and therefore there was no irreparable harm. And then as to Kansas, found that the state law has been in effect since 2013. So therefore, it simplifies the process for the leagues, because now in one step, they can register voters for both state and federal. Are you suggesting that if the district court renders a decision, let's say on Monday after the hearing, denying summary judgment, or are there cross motions, I guess? There are. Are granting summary judgment for you as intervener in Kansas, that this case becomes moot? Am. Yeah, because where we are now is preliminary injunction means preliminary to the final decision of the district court. Yes. And if there is a final decision in the district court, then there's nothing preliminary left to decide. Correct. Yes. And the fact that that case has now been expedited also, with briefing a complete argument in this very building in three days, then it is even more prudent for this court not to address those issues that the district court will be addressing. I see that my time is up. Thank you. Counsel for appellant. Hi, thank you. So let me just take a few points here in no particular order. One, the ITCA case clearly held that there has to be a finding of necessity within the meaning of the statute. The secretary's reliance on a regulation that he would read as essentially contradicting the statute and also ignoring it. You can't get through the back door. He couldn't get through the front. That's really what that is an attempt at. Nobody's interpreted that regulation, not even Mr. Newby, the way Mr. Kovacs suggested it. And we submit it would be a violation of the NVRA and the Supreme Court's ITCA case to read it that way. I don't have anything else to say on that subject. With respect to this notion that there's no policy, the word policy is actually being misused here. The point is there is a long standing precedent by, as we've said, Congress and the regulatory agencies that have had authority over this to reject documentary proof. And I wanted to address the point you raised, to publish this two to one thing. Why can't the commission just decide? The issue is, as Justice Scalia recognized in the ITCA case. Well, that wasn't my point, but go ahead. Yeah, okay, I understand. This isn't a question about overruling the executive director. He didn't have authority to begin with. Okay, that's the premise. So the way to think of it is you have to get three votes to effectively abandon what he did. That's not the law. And Justice Scalia made it pretty clear that what happens here is if you don't get three votes, the result is no action is taken. It's not that no action is taken on what the executive directive did. It's no action is taken on what was proposed by the state. So it's not as if I can't explain why the EAC hasn't addressed this. My point was the Department of Justice has taken a position in this court that Mr. Newby acted unlawfully. Yes. Right? Yes. And they're making that representation on behalf of the commission. And yet you're making the argument the commission can't make a decision unless it's by three votes. Yes. And my point was, well, if the commission made a decision that the Department of Justice is correct and allowed them to file this brief, why can't the commission just simply issue an order to that effect and end this case? And then, you know, chances can bring it up that they won or not. Yeah, I mean, look, I can't, I can't. I know you can't answer that. I can't answer that. I wish I could. It would make all of our lives easier. That's my question. I understand. I understand. But it should... It's not an unfamiliar problem with these election commissions. No, correct. That's right. And they're intended to be this way. It's intended for this way. So let me talk about a couple of other topics. One, I wanted to give you the site, Judge, that I promised, which is it's the 2014 Memorandum of Decision, page 44, footnote 26, where we raised this actually as part of that process. And what they say is the EAC will consider the issues that we've raised. After consulting with Louisiana officials, the commission will consider whether there are necessary and appropriate modifications in item six of the state-specific instructions for Louisiana on the federal form to clarify any lingering confusion and to ensure the instructions in full compliance with requirements of FOIA relating to federal elections. Sound like they expressed doubt about the validity of the Louisiana decision. That's how I read it. But I invite you to read it yourself and form your own judgment. The timing, this notion that the judges try to get out ahead of you below by setting forth a summary judgment schedule. We have elections coming up. We have deadlines in a little over a month. We have no guarantee of when the court will rule or what he will rule. But as I pointed out, there's authority in this circuit, which says at this point, we have an administrative record. It's closed. It is what it is. And this court has the ability now to decide this and to vacate. We don't have time, unfortunately, to go back. We brought this case early. We brought it as a PI. And unfortunately, the court delayed in responding. And he may have had good reasons to delay. But the bottom line is we didn't get an opinion until we wrote and asked him for one. And we are now finding ourselves on the eve of an election. And we really need to have this resolved. And sending it back to the court and sending it, we'll just be right back here when this court already has the power to decide this. Last point I want to make. You mentioned that this process, all this is a phone call to the Secretary of State. I didn't mention that. Oh, OK. OK, good. I want to address that point. It seems like... May I ask a question? How does it go about it? Fair. That's a very burdensome approach, right? When we do a voter registration drive, we can't just have him on speed dial and have a conference call. It's only done four of these things in three years, try to get a Secretary of State on the phone in the middle of a voter registration drive to do this. And at the end of the day, the notion that you can do that by phone, I assume it's under oath. I don't know if it's under oath. That's exactly what the federal reform does. It has someone prescribe under oath that they are a citizen. And more importantly, while you may agree, we all may agree or disagree, whatever about the validity of these laws, it's not an issue. The bottom line is Congress has spoken. And the agency that is charged with addressing these issues has consistently rejected it. The notion that there isn't a policy... I want to focus on one thing because counsel suggested I misrepresented something. I did not. This commission, in its early days, did everything by consensus because that was the spirit in which this was passed, this was created. It was a bipartisan commission. HAVA was passed with enormous bipartisan support following the 2000 elections. And they had a practice, which you can see in the record, it's part of the record, that even says, and this is actually one of the opinions that came out in 2006, after careful analysis, the EAC's general counsel, with the unanimous support of EAC commissioners, issued a determination to Florida, this is that early one, which upheld the 13-year president of the NBRA that the federal reform as promulgated by the EAC must be unconditionally used and accepted by all NBRA jurisdictions. I cite it because it shows that there was that practice of informally agreeing... You need to have a vote under the statute, but the statute says you need three commissioners to approve. That's important. There was no requirement of an on-the-record vote. The only reason it became an on-the-record vote is that Arizona approached the commissioner, the chairman of the commission, I think it was the chairman of the commission at the time, and said, we need an accommodation because we're in the middle of a litigation. That's why there wound up being an on-the-record vote. Historically, they had actually done this precisely this way. There was no misrepresentation at all. Let's talk about one misrepresentation I do want to address, the notion of the Browns being registered. They are not registered in any meaningful sense in Kansas law. What they're allowed to do is to vote at the pleasure of the secretary of state. They received provisional ballots for the August 3rd primary, which the secretary of the state, in his good grace, decided to let them cast, and they were allowed to vote in the federal election. He may do that on November 8th, okay? Nothing that binds him to do that. And frankly, in the litigation that they've been having in other courts, there have been suggestions more categorically that he wants to reserve the rights as to what to do with those people. And that is not, this is exactly the kind of procedural hurdles that Congress tried to avoid, at least for federal elections. It's why the NVRA was passed. It's why we have the federal form. And the notion that this is speculative harm, this is coming from the secretary's own brief, okay? This isn't, I didn't come up with this number. This is not my number. This is in his brief, page 56. What he says is that Kansas has accepted 62,992 applications to register to vote from the date, which is February 1st to present, of which 11,655 were mail-in applications that may have been on a federal form, okay? That is an extraordinary number. By any means, that is mass disenfranchisement. This court has the power and the opportunity to do something really important here, which is to prevent these people from being disenfranchised. Under Kansas law, you have 90 days to provide proof of citizenship. So if you mail your registration form in without it, you're on a waiting list with 90 days to provide. So that's a constant flux. That list is constantly changing. And some people may never provide it because they move out of state or they die or they decide they don't want to vote. Judge, this isn't my number. This is their number. It's all I'm saying. It's what he put in a brief and he chose to put in a brief. It's not mass disenfranchisement, though. If that is a mass disenfranchisement, with respect, Judge, I don't know what is. But even one voter that be disenfranchised would be too much, given the strength at which Congress has spoken here. All right. Thank you. Do you want to hear from Mr. Tenney? Yeah. All right. Counsel, thank you. Counsel for the department or for the commission, Mr. Tenney, where are you seated? Thank you. You heard my question. I don't want to repeat it for the third time. Do you have any response? Yeah. The brief that we filed in this court was filed by the Department of Justice, which has authority to represent the commission. The commission does not have independent litigating authority in the federal courts until the representations that are made in the brief are representations from the department. Now, wait a minute. If you are representing a commission and I read your brief, I'm not reading the Department of Justice's policy position. I'm supposedly reading the commission's policy position. The department in the civil division or the solicitor general's office has meetings with the general counsel of the various commissions that decide exactly what their position is on these things. You're telling me that what we have here is not the commission's position, it's the Department of Justice's position, and the Department of Justice is not a party to this case. So this brief is not the commission's position. Just to be clear, we're not talking about policy positions, we're talking about legal positions, and there are legal positions- A legal position can't be a policy position. It could. I guess I just want to make clear- You've represented that Mr. Newby acted illegally. And that the Department of Justice is charged by federal statute with representing the commission in court, and- I know that, but that doesn't say that the Department of Justice gives its views regardless of what the commission or the agency's views are. Well, I wouldn't say regardless of what the agency's views are, Your Honor, but the Department of Justice has an obligation to the court if the agency's decision is irreconcilable with governing law as the department concluded it was in this case. The Department of Justice sets out the government's position, and that is what we've done here, and I hope that at least now I've been clear about what it is that we are saying in our brief. Thank you. We will take this case under advisement.
judges: Rogers, Williams, Randolph